**SIGNED.**

Dated: September 11, 2007



_____
**JAMES M. MARLAR
U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| PATRICIA ANN GARCIA, | No. 4-07-bk-00268-JMM |
| Debtor. | **MEMORANDUM DECISION** |

On July 10, 2007, this court heard the matter of the United States Trustee's Motion to Dismiss the Debtor's chapter 7 based on an alleged presumption of abuse, pursuant to § 707(b), and the Debtor's objection and rebuttal thereto.

The Debtor was represented by Jeffrey P. Judge; Larry Watson appeared for the U.S. Trustee. After consideration of the parties' arguments and briefs, as well as the administrative file in this case, the court now issues its ruling.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 28 U.S.C. § 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

# FACTS

Patricia Ann Garcia ("the Debtor") filed a voluntary chapter 7 case on February 26, 2007. In completing the Means Test, on Official Form B22A, the Debtor listed her current monthly income as $3,504.01, which was annualized as $42,048.12.

The first step in the Means Test is to determine whether the debtor qualifies for § 707(b)(7)'s "safe harbor" protection. This provision bars dismissal of a chapter 7 case if the combined current monthly income of the debtor and the debtor's spouse, multiplied by 12, is equal to or less than the forum state's median family income for a family the size of the debtor's household in the year the debtor filed for bankruptcy.

Since the unmarried Debtor's annual income was $42,048.12, it exceeded the Arizona state median income for a family of one ($38,703), and she was not entitled to the "safe harbor." Under § 707(b)(2)(A)(ii), the Debtor was nonetheless allowed to subtract her monthly expenses in order to reduce her reported income. Therefore, the Debtor completed the portion of the Means Test for expense deduction claims.

On Line 23, the Debtor deducted $471 as a "Local Standards: transportation ownership/lease expense" for one vehicle. In fact, Debtor owns a 1996 Buick Century free and clear of any lien and accompanying loan or lease payment. By making this and other deductions, however, Debtor brought her income below the level where abuse is presumed. She therefore, in the certification on the front of the form, checked the box marked "The presumption does not arise."

On April 20, 2007, the U.S. Trustee filed a Statement of Presumed Abuse. And on May 17, 2007, it filed a motion to dismiss the case under § 707(b)(1) based on presumed abuse of the chapter 7 Code provisions.

In its review of the Debtor's petition and Means Test, the U.S. Trustee calculated her income based on an additional $200 transportation expense deduction, rather than the entire

-2-

$471.[1] Besides the vehicle expense, the U.S. Trustee made two other adjustments which were accepted by the Debtor and which do not affect the outcome of this decision.

Debtor filed an amended Means Test, on July 3, 2007, in which she made the non-transportation adjustments, but she changed neither the $471 amount in Line 23, nor her certification that the presumption of abuse "does not arise."

In the U.S. Trustee's view, the Debtor's income, with the reduced deduction, but also providing an additional $25/month allotment for chapter 13 administrative expenses, would put the Debtor over the presumed abuse threshold, as follows:

| | | |
|---|---|---|
| 18 | Current monthly income for § 707(b)(2) | $ 3,512.00 |
| 47 | Total of all deductions allowed under § 707(b)(2) | $ 3,156.25 |
| | Subtotal - Monthly disposable income | $ 355.75 |
| | Less chapter 13 administrative expense allotment | $ 25.00 |
| 50 | Monthly disposable income | $ 330.75 |
| **51** | **60-month disposable income under § 707(b)(2)** | **$ 19,845.00[2]** |

In contrast, Debtor's Line 51 stated an amount of $4,589.40.

Part VI of the Means Test is the "Determination of § 707(b)(2) Presumption." Section 707(b)(2)(A)(I) effectively provides that the court shall presume that abuse exists if the amount set forth in line 51 is equal to or greater than 25% of the nonpriority unsecured claims or

---

[1] The U.S. Trustee does not dispute that the debtor is entitled to a $200 deduction based on the age of the vehicle. Under the IRS Transportation Standards, in situations where the debtor has no loan or lease payment obligation on a vehicle that is over six years old and/or has reported mileage of 75,000 or more miles, an additional operating expense of $200 may be allowable. See Internal Revenue Manual, Part 5 (entitled Collecting Process), Chapter 8, § 5.8.5.5.2, Treatment of Non-Business Transportation Expenses, which may be found on the IRS website at http://www.irs.gov/irm/part5/ch08s05.html.

[2] The U.S. Trustee calculated the monthly disposable income to be $330 and the amount over 60 months to be $19,829. Any minor deviations in these figures is harmless error.

-3-

$6,000, whichever is greater; or $10,000. Here, Debtor's nonpriority unsecured claims totaled $16,423, and 25% of that amount is $4,105.00, as follows:

| 53 | Amount of your total non-priority unsecured debt | $ 16,423.00 |
|---|---|---|
| 54 | Threshold debt payment amount. (Multiply the amount in Line 53 by the number 0.25 and enter the result) | $ 4,105.00 |

Thus, the first step for the Debtor was to determine whether the amount set forth in line 51 was less than $6,000, and if so, then she may check the box for "The presumption does not arise." That is what the Debtor did pursuant to her own calculation that it was $4,589.40.

According to the U.S. Trustee's calculations, however, Line 51 should have been $19,845.00, which figure exceeded both $10,000 and the threshold debt payment amount of Line 54 ($4,105). If the amount on line 51 is more than $10,000, the debtor is supposed to check the box for "The presumption arises," and complete the remainder of Part VI. The remainder of Part VI asks whether the amount in line 51 is less than the amount in line 54. If so, "The presumption does not arise" box may be checked. If the amount in line 51 is equal to or greater than the amount in line 54, as in this case, then the Debtor must check the box for "The presumption arises." That is why the U.S. Trustee alleged that the presumption of abuse arose.

The Debtor filed a response to the U.S. Trustee's motion, arguing only that she was entitled to take a $471 transportation expense deduction even though she did not have any actual vehicle loan or lease expense. Her argument tracked the Model Brief prepared by the National Association of Consumer Bankruptcy Attorneys.

A hearing was held on July 10, 2007, at which time the Court heard arguments of counsel, and directed counsel to file any supplemental briefs. On August 10, 2007, the U.S.Trustee filed its legal brief.

-4-

# ISSUE

The issue presented is whether, in calculating deductions to current monthly income, a debtor who owns one vehicle outright, and thus has no costs associated with the acquisition or lease of the vehicle, is allowed to take the "applicable" IRS Local Standards deduction of $471 for the vehicle.

# DISCUSSION

The Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") amended the Bankruptcy Code by inserting an objective test known as the "Means Test" to determine whether chapter 7 debtors, with primarily consumer debts, are abusing the system by seeking a quick discharge when they have at least $166.67 ($10,000 over five years) in disposable income with which to pay nonpriority unsecured creditors through a chapter 13 plan of reorganization. 11 U.S.C. § 707(b)(2)(A)(i)(II).

Pursuant to § 707(b)(1), after notice and a hearing, a court "may dismiss a case filed by an individual debtor under [chapter 7] whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]." 11 U.S.C. § 707(b)(1). Congress' main purpose in enacting the amendment was to "ensure that those who can afford to repay some portion of their unsecured debts are required to so do." 151 Cong. Rec. S2462-02, S2470 (March 10, 2005).

As part of the income calculation, the Code provides that a debtor may deduct a list of monthly expenses, beginning with those defined under both the National and Local Standards established by the IRS. The National and Local Standards are part of the IRS's administrative scheme for determining a taxpayer's ability to pay a delinquent tax liability. In re Slusher, 359 B.R. 290, 306 (Bankr. D. Nev. 2007). The National Standards govern such items as food, clothing, personal items, housekeeping supplies, and entertainment, while the Local Standards govern housing, utility, and transportation costs. Under transportation costs, the IRS

Local Standards are broken down into two categories: operational expense (Line 22); and ownership/lease expense (Line 23). The IRS maximum allowed deduction for ownership/lease expense for one car is $471. Form B22A also asks the debtor to subtract from the $471 the amount of average monthly payment on the secured car debt, which has purportedly already been deducted in Line 42. The difference is the allowed deduction for Line 23. (If the secured debt payment exceeds the allowed deduction amount, then the debtor gets the benefit of the greater amount because Line 23 cannot be less than zero.)

Since the Debtor had no car payment, she merely deducted the entire $471. This was erroneous. The Debtor was not entitled to claim an ownership/lease expense deduction because she did not have such an expense to begin with and, therefore, she did not qualify for the deduction.

The U.S. Trustee has proposed that the deduction calculation process consists of "two steps": (1) first, the debtor must be eligible for an allowance because she is making a loan or lease payment on a vehicle ; (2) second, if the debtor qualifies, then the amount of the allowable expense is calculated by looking to the "applicable" IRS Local Standards. This court agrees with this approach, and so joins the line of decisions, exemplified by <u>Slusher</u>. which hold that this interpretation of § 707(b)(2)(A)(ii)(I) comports with principles of statutory interpretation, legislative intent, and public policy. <u>Accord</u>, <u>In re Pampas</u>, 369 B.R. 290, 296-97 (Bankr. M.D. La. 2007).

Section 707(b)(2)(A)(ii)(I) provides, in pertinent part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, . . .

When the "statute's language is plain, the sole function of the court, at least where the disposition required by the text is not absurd, is to enforce it according to its terms." <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000) (internal quotations omitted).

-6-

SIGNED

Case 4:07-bk-00268-JMM    Doc 23    Filed 09/11/07    Entered 09/11/07 15:19:20    Desc
Main Document    Page 7 of 11

Although the statute uses both "applicable" and "actual" expense terms, one term does not negate the other. "Applicable" is an adjective to describe something that is "capable or suitable for being applied: appropriate." Merriam-Webster's Online Dictionary, www.m-w.com/dictionary. If a debtor has no monthly expense amounts to report on Form B22A, then the Local Standard deduction amount for such expense would not be "applicable." That is the logical distinction, and harmony, between an "applicable" expense item and reporting "actual" expenses, which are theoretically without any limit. See Slusher, 359 B.R. at 309-10..

Furthermore, the "last antecedent" rule of statutory construction would dictate that the adjective "applicable" modify the subject that seems most properly related by context and applicability. In this case, "applicable" modifies "expense" or "expense amounts" rather than just "amounts." See Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 251-52 (9th Cir. BAP 2007). The plain meaning of "applicable," in this context, is that the deduction applies to a debtor because he or she incurs a monthly expense for vehicle ownership or rental. See Neary v. Ross-Tousey (In re Ross-Tousey), 368 B.R. 762, 765 (E.D. Wis. 2007); see also In re Carlin, 348 B.R. 795, 798 (Bankr. D. Or. 2006). Cf. In re Demonica, 345 B.R. 895, 905 (Bankr. N.D. Ill. 2006) (concluding that the debtor paid for the use of the vehicle and therefore he incurred a monthly ownership expense).[3]

Alternatively, to the extent that the statute may be ambiguous,[4] the IRS guidelines in the Internal Revenue Manual and the IRS Financial Analysis Handbook are instructive. The relevant portion of the IRS manual explains:

---

[3] In adopting the reasoning of Judge Markell, in Slusher, this Court departs company with several judges and scholars who conclude that "applicable" means that a debtor may apply the Local Standard deduction if she owns a vehicle, whether or not an ownership expense is involved. See, e.g., In re Chamberlain, 369 B.R. 519. 525-26 (Bankr. D. Ariz. 2007); In re Haley, 354 B.R. 340, 343 (Bankr. D. N.H. 2006); Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L. J. 231, 255-57 (2005)).

[4] See, e.g., In re Sawdy, 362 B.R. 898, 903-05 (Bankr. E.D. Wisc. 2007) (holding that divergent interpretations shows that the language is not plain).

| | B. | Transportation - If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense. . . . |

Internal Revenue Manual, Financial Analysis Handbook, Pt. 5, ch. 15, § 5.15.1.7(4.B).

The Court notes that the Code does not specifically incorporate the IRS guidelines. In addition, the IRS collection manual differs from Form B22A in that it "caps" the transportation ownership deduction to the lesser of the actual car payment or the allowance amount, while Form B22A provides for an applicable deduction up to the maximum allowance. Some courts see this distinction, and lack of their adoption by the Code, as eliminating the guidelines entirely from Bankruptcy Court consideration, see, e.g., In re Smith, 2007 WL 1836874, at *8-9 (Bankr. N.D. Ohio, June 22, 2007); Chamberlain, 369 B.R. at 525-26; In re Wilson, 356 B.R. 114, 119-21 (Bankr. D. Del. 2006).

To the contrary, this Court does not view these factors or differences as either dispositive or prohibitive as to the use of the IRS guidelines, which are relevant to a determination of the debtor's eligibility to use the Local Standards. See Slusher, 359 B.R. at 306 (Congress "incorporated into the Bankruptcy Code an existing administrative system that the IRS had long had in place."). The IRS's decision to refer customers to the U.S. Trustee's website is understandable in that the IRS is not posting such standards for use in tax collecting. See Minutes of Advisory Committee on Bankruptcy Rules, September 29-30, 2005 (stating that "the IRS has declined to post the separate standards on its own website and will not use the separate standards for tax collection . . . ."). Many courts have utilized the IRS Financial Analysis Handbook and Internal Revenue Manual in resolving this issue. See, e.g., Slusher, 359 B.R. at 309; Pampas, 369 B.R. at 297, In re Howell, 366 B.R. 153, 157 (Bankr. D. Kan. 2007); In re Oliver, 350 B.R. 294, 301 (Bankr. W.D. Tex. 2006); In re Hardacre, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006); In re McGuire, 342 B.R. 608, 612-13 (Bankr. W.D. Mo. 2006).

As a matter of public policy, the Debtor further argues that the U.S. Trustee's position is unfair to debtors who can only afford older cars, which might be paid off but which

-9-

have high repair and maintenance costs. This argument is not persuasive because repair and maintenance expense is not included in Line 23. See In re Devilliers, 358 B.R. 849, 864 (Bankr. E.D. La. 2007) (The ownership allowance "is not the equivalent of an allowance for depreciation or an invitation for a debtor to 'save' for the ultimate replacement of an existing vehicle. Instead, the deduction is designed to assist with the acquisition of a vehicle on credit."). Moreover, the U.S. Trustee has conceded that Debtor is entitled to an additional $200 operating deduction based on the age of, and mileage of, her car. Furthermore, the Debtor could attempt to rebut the presumption of abuse by establishing the existence of special circumstances, but has not done so. See 11 U.S.C. 707(b)(2)(B).

The Debtor also argues that disallowing her deduction would arbitrarily put her at a disadvantage in regards to another debtor who might file a bankruptcy petition when only one more payment remained to take advantage of the allowed deduction. Thus, although both debtors would effectively be without a car payment in bankruptcy, they would receive disparate treatment. A bankruptcy courts cannot allow a debtor to obtain a windfall deduction, in relation to good-faith debtors with car payments, in order to equalize the playing field with hypothetical debtors who might attempt to use a "loophole" to take advantage of the system. Such matters are within Congress's purview.

In summary, this Court supports the line of cases which would favor the U.S. Trustee's position.

**RULING**

Upon consideration of the evidence and the law, the Court concludes that the Debtor may not claim an ownership/lease deduction if she does not have a monthly vehicle loan or lease expense. She does not have such an expense, and therefore the presumption of abuse arose, which has not been rebutted.

-10-

Case 4:07-bk-00268-JMM    Doc 23    Filed 09/11/07    Entered 09/11/07 15:19:20    Desc
Main Document    Page 10 of 11

1           A separate order will be entered which: grants the U.S. Trustee's Motion to
Dismiss the chapter 7 case under § 707(b)(2)(A).

          DATED AND SIGNED ABOVE.

COPIES served on the date signed above as indicated below:

Jeffrey P. Judge
The Judge Law Firm
1647 N. Alvernon Way, Suite One
Tucson, AZ 85712           email: jpj@judgelawfirm.com

Beth E. Lang, Trustee
1955 W. Grant Rd., Suite 125
Tucson, AZ 85745           Email bethelang@earthlink.net

Larry L. Watson
Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706           Email larry.watson@usdoj.gov

By /s/ M. B. Thompson
    Judicial Assistant

SIGNED